STATE OF FLORIDA ON RELATION OF FRED H. DAVIS, Attorney General, and CHARLES G. RODES, et al., *Co-Relators,* v. CITY OF FORT LAUDERDALE, a Municipal Corporation of Florida, *Respondent.*

Division B.

Opinion filed September 30, 1929.

*Fred H. Davis,* Attorney General, and *Loftin, Stokes & Calkins,* for Relators;

*Hall, Johnson & English,* for Respondent.

BUFORD, J.—In this case information in the nature of *quo warranto* was filed in the name of the Attorney General and certain co-relators against the City of Fort Lauderdale, the purpose of which was to test the right and authority of the city to exercise municipal powers, duties and franchises over certain territory theretofore attempted to have been included within the corporate limits of the City of Fort Lauderdale.

There was a motion to strike certain parts of the information. A part of the motion to strike should be granted. As to other parts, it should be denied. The motion to strike is granted as to:

"All paragraph 8 of said information, as follows: That during the year of 1926, by ordinance of said city,

another attempt was made to further extend the corporate boundaries of said city by taking into the corporate limits of said city about 6 or 7 additional square miles of territory, and such additional territory so attempted to be taken into the corporate boundaries of said city by said ordinances of 1926 is shown by blue lines marked on the face of the map attached hereto and marked 'Exhibit A'; that the corporate territory of said city as attempted to be fixed by said Chapter 11483 of November 30, 1925, together with the territory attempted to be added by ordinances in 1926, comprises an area of about 43 to 45 square miles.

"That portion of paragraph 11 of said information beginning with line 5 on page 15, as follows, to-wit: That the total population in 1926 of the 6 or 7 square miles of territory attempted to be taken within the corporate limits of said city by said ordinances of 1926 was about twenty persons, and said territory is now inhabited by less than that number."

And also as to that part of paragraph 12, as follows, to-wit:

"That said power plant mentioned in the next preceding paragraph of this information, generates electric current and energy for distribution and sale to the cities of Miami, Miami Beach, Coral Gables, Miami Shores, Palm Beach, West Palm Beach, Fort Lauderdale, Bradenton, Callahan, Crescent City, Daytona Beach, Palatka, Fort Myers, Hastings, Lake City, Live Oak, St. Augustine and over a hundred other cities and towns in the State of Florida; that said plant is not in any sense a Ft. Lauderdale enterprise."

And also as to that part of paragraph 13, to-wit:

"That said lands have been assessed by said city at exorbitant valuations."

And also as to that part of paragraph 17, as follows, to-wit:

"That as soon as said city attempted to collect taxes on said lands in the year of 1927, said co-relators engaged counsel for the purpose of contesting the authority of said city to collect taxes on the lands of said co-relators for municipal purposes, and instructed their counsel to make a test case of such exercised unlawful authority; that said co-relators were advised by their said counsel that a case, to-wit: State of Florida ex rel. v. City of Stuart, was pending in the Supreme Court of Florida involving the same question and that another case should not be brought until the Court passed upon the said pending case; that said co-relators instructed their said counsel to obtain permission of counsel representing the State of Florida in said cause of the said State of Florida ex rel. v. City of Stuart, to permit the counsel of the co-relators to assist the State in the preparation of briefs and in oral arguments of said cause before the Supreme Court; that said permission was granted and counsel of the co-relators appeared in and assisted the State in the preparation of briefs and in oral argument in said cause of the State v. City of Stuart; that the Supreme Court of Florida handed down its decision in said cause of the State of Florida ex rel. v. City of Stuart on January 30, 1929."

And also as to that part of paragraph 17, to-wit:

"And, thereupon, on March 4th, 1929, said co-relators, through their counsel, took with the authori-

ties of said City of Ft. Lauderdale, through its counsel, the matter of the voluntary surrender of the lands of the said co-relators from the corporate limits of said city; that a conference was held during the month of March, 1929, between counsel for said co-relators and city attorney of said City of Ft. Lauderdale, and later, to-wit: about March 28, 1929, said co-relators were advised by said city, acting through its attorney, that said city, in view of the decision of this Court in the case of the State v. the City of Stuart, would voluntarily surrender from the corporate limits of said city the said lands of said co-relators and that a special Act would be presented to the Florida Legislature of 1929, now in session, for enactment excluding said lands of said. co-relators; that later, to-wit: on or about the 12th day of April, 1929, the representative of Spitzer Rorick Bond Company of Toledo, Ohio, a bond brokerage concern, met with the commissioners of said city and threatened litigation against said city if it voluntarily surrendered from the corporate limits of said city the lands of said co-relators; that on April 15, 1929, said co-relators were informed by the city attorney of said City of Ft. Lauderdale that the city commission of said city would not voluntarily surrender the lands of the said co-relators from the corporate limits of said city, and thereupon said co-relators instructed their counsel to lay their cause before the attorney general of Florida.''

And also as to paragraph 19, as follows, to-wit:

''That some of the above named co-relators own land located in Sections 1, 2, 11, 12, 13 and 14, Township 50 South, Range 41 East, Broward County, Florida (the 6 sections attempted to be taken into the cor-

porate limits of said city by ordinance of 1926, and lying some 4 miles west of said city) but said lands have not been included in the descriptions contained in paragraph 2 and 3 hereof, and involved in this suit, inasmuch as the relator and co-relators were informed, at the time of filing this information, that said city would apply to the Legislature now in session for the elimination of said land from the corporate limits of said city.''

All of which allegations appear to be irrelevant and immaterial.

The remainder of the motion to strike should be, and the same is denied.

There was a demurrer filed to the information generally and also separate demurrers were filed directed to the ouster sought by the Florida Power & Light Company, a co-relator, and by co-relators whose lands were annexed in June, 1925, and by certain co-relators whose lands were annexed in November, 1925. There was joinder in demurrers.

Briefs have been duly filed and arguments of counsel presented.

The Court having considered the information, the demurrers thereto and the briefs and argument of counsel presented thereon, it is the judgment of the Court that the demurrers, and each of them, should be overruled on authority of the opinion in the case of State ex rel. Davis, Attorney General, et al. v. City of Stuart, filed January 30, 1929, and reported in 120 So. R. 335, and that the respondent do have four weeks from the date of the filing of this order in which to answer or plead further, in accordance with law and the rules of practice of this Court. It is so ordered.

538

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND ELLIS, J., concur in the opinion and judgment.

BROWN, J., dissents to the granting of the motion to strike; but concurs in the overruling of the demurrers.